UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 19-60198-CR-UNGARO/HUNT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JERMAINE WILLIAMS,

    Defendant,

_____/

## REPORT AND RECOMMENDATION

This matter is before this Court on Defendant Jermaine Williams' Motion to Suppress, ECF No. 19. The Honorable Ursula Ungaro referred this motion to the undersigned United States Magistrate Judge for a report and recommendation, ECF No. 23; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. The undersigned held an evidentiary hearing on the motion on January 15, 2020, ECF No. 31. Having carefully reviewed the motion, the response and reply, the entire case file, and applicable law, having heard testimony as well as oral argument of counsel and being otherwise fully advised in the premises, the undersigned hereby RECOMMENDS that Williams' motion be DENIED.

### I. BACKGROUND

Defendant is charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). ECF No 1. The charge arises from an arrest on

October 4, 2018.  At the evidentiary hearing, the Government presented testimony from Detectives Brown and Vieira, and also played their body camera recordings from the arrest.  The evidence showed that on that date, just after 7:00 pm, detectives from the Broward Sheriff's Office VIPER[1] Unit were patrolling in an area of Pompano Beach known for high levels of drug trafficking and other crime.  They encountered a street source (CS) who was known to the officers and who had previously provided reliable information.  The CS provided what Detective Brown described as a "credible tip" that a large black male known as "J-Baby" was in the area driving a blue Buick sedan.  The source knew J-Baby to sell the best crack in town and told police that J-Baby carries a loaded black firearm.  The CS agreed to notify police when he saw J-Baby again.

A short time later, the CS called the police and told them that J-Baby was currently parked at a location on 2nd Place near Dixie Highway.  The three detectives in an unmarked police vehicle immediately drove to the location, which was very close by. As they drove past, they saw a blue Buick backed into a parking spot with its lights on. Detective Brown testified that he saw a large black man in the driver's seat, and a known prostitute and drug user leaning into the window.  Based on his observations and experience, this appeared to Detective Brown to be a hand-to-hand drug transaction, though he admitted he did not see anything change hands.  Detective Vieira also testified that this appeared to him to be a hand-to-hand drug transaction.  He also relied on his experience but added that he saw the woman hand something to the driver, and the driver hand something to the woman.

---

[1] Violence Intervention Pro-Active Response.

The detectives made an immediate U-turn, never losing a visual on the Buick and its driver.  As they approached the car, the driver exited the vehicle and walked away, leaving the headlights on and the windows up.  Based upon the corroborated tip and their own visual observations, Detective Vieira confronted and detained the driver, Mr. Williams.  Williams repeatedly told the detectives that he had not been in the Buick and had not walked away from the Buick.  A pat down of Defendant revealed about $500 in cash, including $40 in his left hand, and the keys to the Buick.

Upon approaching the vehicle, Detective Brown testified that he smelled the odor of fresh cannabis.  He looked inside the car with a flashlight and observed on the passenger-side floorboard a clear plastic bag with smaller baggies inside containing what appeared to be marijuana.  He opened the car door and saw what appeared to be a firearm directly under the driver's seat readily accessible to the driver.  Further search revealed that it was in fact a loaded firearm.  Because the woman at the car window said someone else had been on scene and ran behind a building, Detective Brown went to that location to investigate, but found no one there.  He then returned to the car.  Further search of the car revealed a baggy in the center console that contained capsules of heroin and fentanyl.

Meanwhile, Detective Zamora opened the driver's side door and observed an M&M container on the driver's seat, which he knew to be a common method of concealing narcotics.  The tube contained crack cocaine.  In total, the detectives recovered 12 grams of crack cocaine, 5 baggies of marijuana, 24 capsules of heroin, 2 baggies of heroin, a loaded black Taurus 9mm pistol, and $200 cash from the car.

After the Detectives confirmed that the keys taken from Defendant's shorts locked and unlocked the Buick, Defendant made several statements to the effect that it was the end of the world and "I know I am dead." These statements were not in response to any direct questioning from police regarding the offense. The Detectives made arrangements to have the car towed, and at his request allowed Defendant to call his girlfriend. Defendant's side of this conversation is recorded on the police bodycams. Once Defendant's girlfriend arrived on scene, some of their conversation is also recorded on the bodycams. These discussions were also not in response to police questioning. Law enforcement officers then inventoried the Buick on scene and had it towed away.

## II. ANALYSIS

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A necessary corollary to this right is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *United States v. Ross*, 456 U.S. 798, 825 (1982). Defendant argues that none of these exceptions apply, and that the search and seizure are therefore unconstitutional. Specifically, he argues that the Buick was searched without probable cause, and therefore any fruits of that search should be suppressed. He further argues that at least some of the post-arrest statements were made in response to police questions or statements that were reasonably likely to elicit an incriminating response.

The Government argues first that Defendant has no standing, as he has shown no legitimate expectation of privacy in a vehicle to which he disclaimed any connection. The Government next argues that the Detectives had both reasonable suspicion and probable cause to search Defendant's person and the Buick. The Government further maintains that the firearm would inevitably have been discovered during a valid inventory search, and that even if this Court finds a Fourth Amendment violation, the officers acted in good faith. Finally, the Government argues that all of Defendant's statements were spontaneous and not in response to law enforcement interrogation and are therefore admissible. The undersigned addresses each of these issues in turn.

### A. Standing

"A defendant has standing to challenge a warrantless search if the defendant had a 'legitimate expectation of privacy' in the property when it was searched." *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). "'[I]t is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned.'" *United States v. Sparks*, 806 F.3d 1323, 1342 (11th Cir. 2015) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)). "The critical inquiry when determining whether an abandonment has occurred is 'whether the person prejudiced . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question'" at the time of the search. *Id.* (quoting *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994)). While the defendant has the burden of proving a legitimate expectation of privacy, the burden of proving abandonment is on the Government. *Ramos,* 12 F.3d at 1023.

5

The abandonment inquiry is an objective one using a common-sense approach, with the defendant's intent "discerned from statements, acts, and other facts." *Sparks,* 806 F.3d at 1342. The Eleventh Circuit has held that "disclaiming ownership or knowledge of an item ends a legitimate expectation of privacy in that item." *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982) (drawing a distinction between an affirmative disavowal of ownership and a passive failure to claim incriminating evidence).

Here, the Government argues that Williams, by word and action, disclaimed any connection to the Buick and thereby lost any reasonable expectation of privacy. Specifically, the Government argues, although the patrolling detectives observed Williams engaged in what appeared to be a hand-to-hand drug transaction from inside the Buick, once they returned to the scene Williams exited the Buick and walked away from the vehicle. Williams then repeatedly told the detectives that he had not been in the Buick. The Government maintains that these facts demonstrate that at the time of the search, "not only did Williams fail to convey a subjective expectation of privacy in the vehicle, he affirmatively disavowed any such expectation and disclaimed any connection or ownership—thereby abandoning any privacy interest in the vehicle that he otherwise might have had." ECF No. 25 at 9.

The defense contends that in determining standing, the court must look at the totality of circumstances, including any preliminary statement of ownership made by a defendant at a motion to suppress hearing. *Hawkins*, 681 F.2d at 1345. While it found no standing under the facts before it, the *Hawkins* court cautioned that its holding does not mean that "a defendant must necessarily claim a property interest in the article at

6

the time of the search or that every type of statement disclaiming ownership of an article forecloses the establishment of a reasonable expectation of privacy therein." *Id.*

Here, Williams clearly and repeatedly denied that he had been in the Buick. But the Government conceded (at argument on the motion) that he never specifically said that it was not his car. The detectives saw him exit the car and quickly located keys to the car in his pocket. After he was under arrest, the detectives allowed Williams to call his girlfriend to the scene and they gave her information about how and where to retrieve the car after it was towed. Clearly, everyone on scene acted in accordance with the obvious reality of the situation – that Williams, denials notwithstanding, had been in the driver's seat of the car and had control of the vehicle (by virtue of the keys in his pocket) even after he walked away from it. While Williams' repeated disclaimers may well be sufficient to justify abandonment, the undersigned is reluctant to make such a finding given the other factors discussed above, most importantly the absence of a specific denial of ownership/control of the vehicle.

Accordingly, the undersigned finds that Defendant has standing to challenge the search and seizure.

### B. The Search of the Car

Defendant's actual challenge to the search is a much clearer call. Based on the evidence presented at the hearing, the detectives had the right to make an investigatory stop and then had probable cause to search the car.

Police officers are authorized to make an investigatory stop where they have "reasonable suspicion" of criminal activity. *See United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000). Here, the detectives, while patrolling an area of high drug activity,

received a detailed tip of suspected drug activity from a known source. That tip led them directly to the Buick where they saw Defendant in the driver's seat. This tip was "corroborated by independent policework, [and] exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama v. White*, 496 U.S. 325, 326-27 (1990). More than simple corroboration, two detectives testified that they saw Defendant conduct a hand-to hand transaction through the driver's window to a known narcotics user. This observed transaction, under the totality of the circumstances, was enough to lead experienced narcotics detectives to suspect drug activity. *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1313-14 (11th Cir. 2009) (investigatory stop was justified where officer's "suspicion that the defendant was engaged in a hand-to-hand drug transaction was supported by several specific, objective, and articulable facts").

Once the detectives made a U-turn and approached the Buick, Williams rolled up the window and walked away from the Buick, distancing himself from the vehicle. This behavior added to the detectives' reasonable suspicion. *See United States v. Pantoja-Soto*, 739 F.2d 1520, 1524 (11th Cir. 1984) (defendants' presence at a gas station where a drug deal had occurred, coupled with their flight from law enforcement, was sufficient to show probable cause); *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (nervous, evasive behavior is a pertinent factor in determining reasonable suspicion).

The Fourth Amendment's protections extend to the driver of a car. *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1987). Nevertheless, the Supreme Court long ago held that a warrantless search of an automobile by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the

meaning of the Fourth Amendment.  *Carroll v. United States*, 267 U.S. 132 (1925).  And, if probable cause justifies the search of a vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).  This includes closed containers.  *Id.*

Under the automobile exception, a warrantless search of a car is constitutional if: (1) the car is "readily mobile" (that is, operational), and (2) probable cause exists to believe that it contains contraband or evidence of a crime.  *United States v. Lanzon*, 639 F.3d 1293, 1299-1300 (11th Cir. 2011).  The Eleventh Circuit has consistently held that the smell of marijuana coming from a vehicle can establish probable cause to search the vehicle for drugs.  *See United States v. Williams*, 731 F. App'x 863, 867 (11th Cir. 2018) (citing *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015)); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc).

Here, when the detectives questioned Defendant and as they approached the Buick, they smelled the odor of marijuana emanating both from Defendant's person and from the vehicle.[2]  Based on that detected odor, they had probable cause to search the Buick.  *See United States v. Johnson*, 445 F. App'x 311, 313 (11th Cir. 2011) ("Our case law establishes that if a police officer detects the odor of marijuana, this gives rise to probable cause supporting a warrantless search.") (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11thCir. 1991) (en banc)); *United States v. Smith*, 481 F. App'x 540, 544 (11th Cir. 1012) (probable cause to search vehicle based on smell of marijuana)

---

[2] Detective Brown testified that he smelled marijuana.  Detective Zamora did not testify, but a bodycam recording played at the hearing captured detective Zamora also saying, "We smelled the weed . . . when we pulled up on the vehicle."  Government's Exhibit 3 at 2.

9

(citing *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982)); *United States v. Brotemarkle*, 449 F. App'x 893, 895 (11th Cir. 2011)(same).

Moreover, the tip in this case indicated that J-baby was usually armed while selling drugs. As the detectives approached the vehicle, which had tinted windows, they did not have a clear view of the interior of the car and who or what might be inside. Under these circumstances, the detectives were authorized to "'take such steps as [are] reasonably necessary to protect their personal safety.'" *United States v. Purcell*, 236 F.3d 1274, 1277-78 (11th Cir. 2001) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). Such reasonable steps may include opening a vehicle's doors if its windows are tinted, thus obscuring the interior of the vehicle and its occupants. *See United States v. Stanfield*, 109 F.3d 976, 979-80 (4th Cir. 1997) (during a lawful traffic stop, officers approaching a vehicle with windows so heavily tinted that they are unable to view the interior of the stopped vehicle may open a car door to ascertain, among other things, whether there are other occupants of the vehicle who might pose a danger to the officers).

Significantly, the detectives in this case not only detected the smell of marijuana as they approached the Buick, they had observed what they believed, based on their observations and experience, to be a hand-to-hand drug deal. Although at the time the Buick was searched Defendant was being questioned and did not have access to the car, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be

found in the vehicle.'" *Arizona v. Gant,* 556 U.S. 332, 343 (2009) (internal citation omitted).[3]

Armed with probable cause, the detectives in this case proceeded to conduct a reasonable search of the Buick. Detective Brown shined his flashlight through the passenger-side window and testified that he observed clear plastic baggies containing what appeared to be marijuana packaged for sale. After opening the door, he was also able to observe a firearm under the driver's seat. Detective Zamora opened the driver-side door and observed an M&M tube that contained crack cocaine. Additional search of the Buick turned up additional narcotics.

For all the above reasons, the undersigned concludes that the search of the vehicle was reasonable and lawful.[4]

### C. Statements

Finally, Defendant argues that some of the statements he made while in custody must be suppressed because "the police initiated questioning of Mr. Williams *knowing* it was reasonably likely to elicit an incriminating response. . . . [and t]hese questions led to Mr. Williams making incriminating statements." ECF No. 19 at 5.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const.

---

[3] It is not clear exactly when Defendant's detention became an arrest. But based upon the totality of circumstances, the detectives had probable cause to arrest Williams for sale of marijuana. Although he was charged in state court with possession, not sale, Detective Brown testified that the packaging and the detectives' observations were also consistent with a felony charge of sale of marijuana.

[4] The Government offers other justifications for the search, including plain view, inevitable discovery pursuant to inventory search, and good-faith exception. Because of the above findings regarding probable cause, the undersigned does not reach these issues.

amend. V. This protection extends to "informal compulsion exerted by law-enforcement officers during in-custody questioning." *Miranda v. Arizona*, 384 U.S. 436, 461 (1966). However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. Volunteered statements of any kind are not barred by the Fifth Amendment." *Id.* at 478. Police interrogation, for *Miranda* purposes, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The inquiry focuses primarily on the perceptions of the suspect, rather than the intent of the police. *Id.* at 301.

There is no dispute that at the time Williams made statements he was in custody within the meaning of *Miranda.* Defendant contends that certain statements and questions by Detective Viera caused him to make incriminating statements. Specifically, Detective Vieira responded to one of Defendant's many denials of being in the Buick as follows:

> VIEIRA: Come on bro, you got the keys to it in your pocket. Try again. This ain't our first day. You can lie all you want, right? Lies just going to make it worse. We know what we saw. You got the keys in your pocket. It's not the end of the world, but when you lie it makes matters worse.
>
> WILLIAMS: It's the end of the world, I know it is.
>
> VIEIRA: Why is it the end of the world?
>
> WILLIAMS: I know, I'm dead.
>
> VIEIRA: You're dead? No, you're not dead, you're still alive. You'll have your day in court just like everybody else. Innocent until proven guilty, right?

12

ECF No. 25-1 at 4.

Viewed in context, the undersigned does not find that these (and similar) statements and questions by Detective Vieira were reasonably likely to elicit an incriminating response from Williams. Accordingly, Defendant's statements were not made in response to custodial interrogation, and therefore should not be suppressed.

### D. Conclusion.

In sum, the detectives had a valid basis for an investigatory stop and had probable cause to search the vehicle. There is therefore no Fourth Amendment violation, and the physical evidence should not be suppressed. Defendant's statements made to law enforcement were not made in response to custodial interrogation, and therefore should not be suppressed. Accordingly, the Defendant's Motion to Suppress should be denied.

### III. RECOMMENDATION

Based upon the foregoing, the undersigned hereby RECOMMENDS that Jermaine Williams's Motion to Suppress, ECF No. 19, be DENIED.

Because of the current trial schedule, the period for objections must necessarily be shortened. Unless otherwise modified by the District Court, Defendant may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district on or before February 7, 2020. Any response by the Government must be filed on or before February 11, 2020. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 31st day of January, 2020.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE